The opinion of the Court was delivered by
Dunkin, Ch.
It can scarcely be contended that, prior to 17th December, 1S54, when the defendant purchased from the intestate slaves to the value of f5,S00, she had already made to him a valid gift of her whole estate. If the paper *106 signed on the day before the death of the intestate be not testamentary in its character, but a gift, inter vivos, then, if the intestate had recovered, her whole estate had passed from her; for, by that paper, no life estate is reserved, nor is the gift thereby rendered invalid in the event of her restoration. It is true that the language of the paper was that of the witness who prepared it; but, to give it any effect for the benefit of the donee, it must be regarded as adopted by the donor: and, when she says, “ I wish all I possess in this world to belong to my son and his heirs forever, both real and personal,” and disposes of her wardrobe to her sister, it is a manifest declaration of what she intended to take effect in relation to her estate after her decease, and fulfils all the requisites of a last will and testament, wanting only the attestation of witnesses to give it effect as such.
The remaining grounds present questions not made at the hearing, and, therefore, not considered in the decree; but they are, nevertheless, very properly now submitted to the judgment of the Court. It is contended that the doctrine of advancements is not applicable to the estates of widows; and for this proposition the appellant adduces the authority of Lord Chancellor King in Holt vs. Frederick, 2 Peere Williams, 356. It is true it was so held, “although,” as the reporter says in a parenthesis, “ without much debate.” His lordship decided that “ the statute of distributions was grounded on the custom of London, which never affected a widow’s personal estate;” and “ that the Act seems to include those within the clause of hotchpot who are capable of having a-wife as well as children, which must be husbands only.” If this course of reasoning could be sustained, it would apply not only to the principle of advancements, but to every other canon in the former statute of distributions in relation to the estates not only of widows, but of married women, and of spinsters. Each clause of that statute (A. D. 1712) 2 Stat., 524, refers to the estate as that of a man; nor is there any provision, as in the Act of 1791, that, in the *107 event of the death of a married woman, leaving a husband surviving her, the distribution of her estate shall be the same as that of his. But the argument of the learned serjeant, in Holt vs. Frederick, is quite satisfactory. “ The word his takes in both sexes, as mankind comprehended both; and homo was hie velhcec homo\ that the act of Parliament intended an equality among children, and this favorite doctrine in equity ought to be extended as well in case of a mother as a father.”
But the Statute of 1791 was passed in pursuance of the provision of the Constitution directing the Legislature to abolish the right of primogeniture, and provide for an equitable distribution of the estates of intestates. All the principal clauses refer to the intestate as him, and to the estate as his. The tenth and eleventh clauses provide for the distribution of the estate, “ on the death of a married woman,” leaving a husband or leaving no husband. But for the distribution of the estate of a spinster no special provision is made; and for the obvious reason above stated in the argument of Holt vs. Frederick, and that any more restricted construction would fall short of the declared purpose of the statute. But the clauses should be construed together, as in pari materid. The Act provides that, in the event of the death of a widow, her estate “ shall be distributed among her descendants and relations in the same manner as therein before directed in case of the intestacy of a married man.” The subsequent clause in relation to advancements refers to the previous canon for distribution among the children or issue of the intestate, and should be taken, and has always been taken, as part of that canon. No new or additional order of distribution is declared, but provision is rather made for an equitable administration of the prior canon. The estate of the widow must be distributed in the same manner. Although no express adjudication has been adduced from our reported cases, yet such seems to have been the received opinion from a very early period after the enactment of the statute, as may *108 be seen by reference to Grimke’s Law of Executors, p. 2S5 (published in 1797), and ex parte Lawton, 3 Des., 201, note.
The remaining grounds in relation to advancements may be considered together. It is true that, while the child is alive, a gift to the grand-child may not be an advancement; but gifts made to the grand-child, after the death of his parent, must not only be brought into the account, but all previous advancements to such parent in his lifetime. Then it is said the release of a debt, or rather the iutentional destruction by the parent of the evidence of a debt due to him by his child, is no advancement. On 17 December, 1854, the intestate owned eleven slaves, which she, on that day, sold to her son, taking his bond for the purchase money. If, instead of selling him the slaves, she had made him a deed of gift of them, it would seem clearly an advancement. If, instead of selling the slaves to her son, she had sold them to a stranger, taking his bond for the purchase money, and she had transferred the bond to her'son, it would be not less an advancement. And so, when she released, or gave up, or destroyed, his own bond to her, it was an advancement of so much money, and must be so accounted for.
Then it was said that the intestate did not intend that her son should account for the bond as an advancement. This can hardly be said to be a question of intention. A father may give his son half his estate and declare, by the most formal instrument, that he does not intend it as an advancement; but, if he afterwards die intestate, the law precludes such son from any share in the inheritance, unless he bring such previous gift into hotchpot. What is, or is not, an advancement may depend on circumstances, as in Murrell vs. Murrell, 2 Strob. Eq., 148 ; Cooner vs. May, 3 do., 185 ; and Ison vs. Ison, 5 Rich. Eq., 15; but the mere declarations of the donor cannot alter the operation of the law either as to the character of the gift, or even the mode of valuation. See Youngblood vs. Norton, 1 Strob. Eq., 122.
In reference to the fourth ground of appeal, it may be *109 remarked that the infant plaintiff is certainly entitled to an account from the death of the intestate, and, being the sole distributee, the whole object of the administration was to establish her rights.
This Court perceive no error in the decree of the Circuit Court, and it is ordered and decreed that the same be affirmed.
Johnston and Wardlaw, CC., concurred.

Decree affirmed.